UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GIDALIY BRONNBERG, *et al.*,

               Plaintiffs,

         v.

LM GENERAL INSURANCE COMPANY,

               Defendant.
-------------------------------------------------------------------X

**DECISION & ORDER**
20-CV-002 (WFK) (CLP)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiffs Gidaliy and Rita Bronnberg ("Plaintiffs") bring this case against their insurer, LM General Insurance Company ("Defendant"), seeking to recover damages arising from an automobile accident. Before the Court are Defendant's motion for partial summary judgment and Plaintiffs' motion to strike certain of Defendant's affirmative defenses. For the reasons stated herein, Defendant's motion is **GRANTED** and Plaintiffs' motion is **DENIED**.

## BACKGROUND

### I. Factual Background

At summary judgment, all factual ambiguities are resolved, and all reasonable inferences are drawn, in the light most favorable to the non-moving party. *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

On February 23, 2018, Plaintiff Gidaliy Bronnberg (together with Rita Bronnberg, "Plaintiffs") was crossing the street when he was struck from behind by a left-turning car on Avenue M in Brooklyn, New York. Complaint ¶ 1, ECF No. 1-1 ("Compl."). Plaintiffs allege the accident was caused by the negligence of the driver, Samuel Martinez. *Id.* ¶¶ 2, 8. Plaintiffs also allege that, as a result of the accident, Plaintiff Gidaliy Bronnberg suffered "severe and serious personal injuries to mind and body," becoming "sick, sore, lame and disabled and subject to great physical pain and mental anguish." *Id.* ¶ 7.

Mr. Martinez had $50,000.00/$100,000.00 in limited liability coverage through his insurer Esurance, an Allstate Insurance Company. *Id.* ¶ 2. Plaintiffs had $100,000.00/$300,000.00 in Supplementary Uninsured/Underinsured Motorist ("SUM") coverage through their insurer Liberty Mutual ("Defendant"). *Id.* ¶ 3. SUM coverage

> enables a person to cover himself/herself with the same level of protection against personal or bodily injury as one affords for the protection of others. Thus, should an individual sustain severe bodily injuries in an accident where the offending driver has no coverage, or only limited coverage . . . the injured party . . . could expect its own insurer . . . to make it up to him; by paying up to the limits purchased.

Pls.' Opp'n to Def.'s Mot. to Dismiss ¶ 6.

Plaintiffs' insurance policy contained an offset provision reducing the amount claimable in SUM coverage by any amount received from the underlying tortfeasor, thereby preventing duplicative recovery. *See* Exs. to Notice of Removal and Compl., ECF No. 1-1. This provision was located on the fifth and final page of the policy declarations of Plaintiffs' insurance policy. *Id.* On August 7, 2019, Esurance tendered Mr. Martinez's policy limit of $50,000.00 to Plaintiffs in satisfaction of Plaintiffs' claims against him. *See* Def.'s R. 56.1 Stmt. ¶ 8, ECF No. 53-10.

II. <u>Procedural History</u>

On November 29, 2019, Plaintiffs sued Defendant, seeking SUM coverage for damages resulting from the auto accident over and above Mr. Martinez's $50,000.00 policy limit. *See generally* Compl. The Complaint sets forth four causes of action for breach of contract, breach of the covenant of good faith and fair dealing, and loss of consortium as to Plaintiff Rita Bronnberg. *Id.* On January 2, 2020, Defendant removed the case from Kings County Supreme Court to this Court. Notice of Removal, ECF No. 1.

On April 22, 2020, the parties completed briefing on Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF Nos. 15–19. Defendant sought dismissal of all claims "except for the claim in relief sounding in breach of contract and seeking recovery of up to the sum of $50,000[.00] under the SUM benefits portion" of Plaintiffs' insurance policy. Potashner Decl. in Supp. of Mot. to Dismiss ¶ 2, ECF No. 15-1. On March 17, 2021, the Court granted in part and denied in part Defendant's motion to dismiss. *See* Decision & Order as to Mot. to Dismiss, ECF No. 27. The Court found Plaintiff had adequately pled a claim for breach of contract but not for breach of the covenant of good faith and fair dealing. *Id.*

On March 31, 2021, Defendant filed its Answer, setting forth ten affirmative defenses. Answer, ECF No. 29. On December 16, 2022, the parties completed briefing on their cross-motions for summary judgment. ECF Nos. 52–57. Notably, Plaintiffs moved for summary judgment only as to three of Defendants' affirmative defenses; as such, Defendant characterized Plaintiffs' motion as a motion to strike. *See* ECF Nos. 52-11 and 54-5. On July 30, 2025, the Court held oral argument on the parties' motions. *See* Minute Entry dated July 30, 2025.

## STANDARD OF REVIEW

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing "which facts are material," courts look to the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The moving party generally bears the burden of proving they are entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, for issues on which the

3

nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* To survive summary judgment, the nonmoving party must show "sufficient evidence . . . for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "[T]he court is not to make credibility determinations or weigh the evidence. 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000)).

Moreover, "[t]he law regarding the interpretation of insurance policies is well settled. Any ambiguities in the policy must be strictly construed against the insurer, who drafted the policy, and in favor of the insured." *Allstate Ins. Co. v. Urban*, 23 F. Supp. 2d 324, 324–25 (E.D.N.Y. 1998) (Spatt, J.) (citing *United Cmty. Ins. Co. v. Mucatel*, 127 Misc. 2d 1045 (Sup. Ct. 1985), *aff'd* 119 A.D.2d 1017 (1st Dep't 1986), *aff'd* 69 N.Y.2d 777 (N.Y. 1987)).

## ANALYSIS

I.   <u>Plaintiffs' Motion to Strike Certain of Defendants' Affirmative Defenses</u>

The Court treats Plaintiffs' motion for summary judgment on certain of Defendant's affirmative defenses as a motion to strike those defenses. Under Fed. R. Civ. P. 12(f), courts may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Plaintiff moves to strike three of Defendant's affirmative defenses: (1) that Plaintiffs' Complaint is barred "by the doctrines of waiver, laches, unclean hands, and/or estoppel" (second affirmative defense); (2) that Plaintiff Gidaliy Bronnberg's alleged medical condition "is not the

result of the accident alleged in the Complaint; nor was such accident or his injuries caused by the fault of anyone other than himself" (seventh affirmative defense); and (3) that Defendant's policy excludes coverage for certain situations (eighth affirmative defense). *See generally* Pls.' Mot. for Summ. J. for the Dismissal of Several Affirmative Defs.; Answer at 4–6.

In response to Plaintiffs' motion to strike these defenses, Defendant withdrew its second affirmative defense in its entirety as well as a portion of its eighth affirmative defense.[1] Def.'s Opp'n to Pls.' Mot. to Strike at 1–2, ECF No. 54-5. Accordingly, the Court addresses only Plaintiffs' motion to strike Defendant's seventh affirmative defense, which addresses Plaintiff Gidaliy Bronnberg's comparative negligence, and the remaining portion of Defendant's eighth affirmative defense, which argues SUM coverage is precluded for "non-economic loss where Gidaliy did not sustain serious injury as defined in Section 5102(d) of the New York Insurance Law." *Id.* at 2–3.

As Plaintiffs concede, courts generally disfavor motions to strike affirmative defenses. *Coach, Inc. v. Kmart Corps.*, 756 F. Supp 2d 421, 425 (S.D.N.Y. 2010) (McKenna, J.). For courts to strike defenses on such grounds, there must be: (1) "no question of fact that might allow the defense to succeed"; (2) "no substantial question of law that might allow the defense to succeed"; and (3) prejudice to plaintiffs from "the inclusion of the defense." *Id.* (internal citations omitted).

Plaintiffs fail to establish that Defendant's seventh and eighth affirmative defenses present no questions of fact and law. *See id.*; *see also Green v. Venettozzi*, 14-CV-1215, 2017

---

[1] Defendant withdrew the portion of its eighth affirmative defense addressing "Exclusion 1" in Plaintiffs' insurance policy, precluding SUM coverage when the insured "fail[ed] to obtain LM General's consent to settle." Def.'s Opp'n to Pls.' Mot. to Strike at 2. The remaining exclusion is "Exclusion 3," precluding SUM coverage unless the insured sustained serious injury. *Id.* at 2–3.

5

WL 11906062, at *1 (N.D.N.Y. Apr. 21, 2017) (Hummel, Mag.) (stating courts will not strike affirmative defenses "unless the moving party can establish that the defense is totally insufficient as a matter of law"). Quite the contrary. Starting with its seventh affirmative defense, Defendant shows there exist both questions of law and fact. With respect to questions of law, the parties disagree on how New York's comparative negligence principles apply to Plaintiff Gidaliy Bronnberg's accident. Pls.' Reply to Mot. to Strike at 5; Def.'s Opp'n to Pl.'s Mot. to Strike at 5–7. With respect to questions of fact, the parties disagree on whether Plaintiff Gidaliy Bronnberg looked both ways before crossing the street. At his deposition, Plaintiff Gidaliy Bronnberg responded "[n]o" when asked whether he "look[ed] on [his] left side and [his] right side to make sure no cars were coming." Defs.' Opp'n to Pls.' Mot. to Strike at 4; Ex. 3 to Potashner Decl. ("Gidaliy Dep.") at 74:12–18. Defendant argues this response raises, "[a]t a minimum, an issue of fact . . . as to whether Gidaliy . . . was contributorily negligent in causing the accident (or whether he was completely at fault)." Defs.' Opp'n to Pls.' Mot. to Strike at 5. Given these outstanding questions of law and fact, the Court cannot conclude Defendant's seventh affirmative defense is so "totally insufficient" to warrant striking it.

Turning to the remaining portion of Defendant's eighth affirmative defense, Defendant again demonstrates outstanding questions of fact that prevent the Court from granting Plaintiffs' motion to strike. The remaining pertinent exclusion raised by Defendant's eighth affirmative defense is "Exclusion 3," which precludes SUM coverage "[f]or non-economic loss, resulting from bodily injury to an insured and arising from an accident in New York State, unless the insured has sustained serious injury as defined by Section 5102(d) of the New York Insurance Law." Defs.' Opp'n to Pls.' Mot. to Strike at 2–3. Such exclusions are permitted under New York law. *Raffellini v. State Farm Mut. Auto. Ins. Co.*, 9 N.Y.3d 196, 199 (2007) ("The issue in

6

this case is whether a 'serious injury' exclusion in a supplementary uninsured/underinsured motorist endorsement to an automobile liability policy is enforceable. We conclude that it is.").

Whether Plaintiff Gidaliy Bronnberg's injuries rise to the statutory definition of "serious injury" set forth in the New York Insurance Law—as required for Plaintiffs to claim SUM coverage under the terms of their policy—is an open factual issue. New York Insurance Law Section 5102(d) defines "serious injury" as:

> [A] personal injury which results in death; dismemberment, significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function, or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

The Complaint alleges Plaintiff Gidaliy Bronnberg became "sick, sore, lame and disabled and subject to great physical pain and mental anguish" from the accident. Compl. ¶ 7. More facts are needed to determine whether these generally alleged injuries are subject to the foregoing definition of "serious injury." Consequently, the Court does not strike Defendant's eighth affirmative defense.[2]

In light of the above, the Court denies Plaintiffs' motion to strike.

II.   Plaintiffs' Breach of Contract Claim

As in its previous decision on Defendant's motion to dismiss, the Court addresses Plaintiffs' first and second causes of action together as Plaintiffs' breach of contract action. *See*

---

[2] In their reply brief in support of their motion to strike, Plaintiffs erroneously claim Defendant withdrew its eighth affirmative defense in its entirety. Pls.' Reply to Mot. to Strike at 4. Defendant correctly states that Plaintiffs did *not* move to strike the portion of the eighth affirmative defense addressing this particular exclusion.

7

Decision & Order as to Mot. to Dismiss at 3. To the extent Defendant requests dismissal of Plaintiffs' second cause of action as duplicative of their first, the Court denies that request as moot.

Defendant moves for summary judgment on Plaintiffs' combined breach of contract claim. Plaintiffs argue Defendant committed breach of contract by failing to pay them $100,000.00 in SUM coverage under Plaintiffs' policy; Defendant argues Plaintiffs cannot recover more than $50,000.00 in SUM coverage under their policy because Mr. Martinez's insurer, Esurance, already tendered them $50,000.00 for Plaintiff Gidaliy Bronnberg's injuries.[3] Def's. Mot. for Partial Summ. J. at 1; *see supra* Background—Factual History. Defendant points to the offset provision in Plaintiffs' policy reducing SUM coverage by any amount received from the underlying tortfeasor's insurer. Ex. 1 to Def.'s Mot. for Partial Summ. J. at 6, ECF No. 53-2.

Plaintiffs argue that, under New York law, courts will not enforce "misleading and ambiguous" underinsurance offset provisions. *Mucatel*, 127 Misc.2d at 1046. For this general principle, Plaintiff relies extensively on the *Mucatel* case. The court in *Mucatel* found an insurance carrier was not entitled to an offset where the policy declaration page did not include a specific provision authorizing such reduction. *Id.* at 1047; *see also Nationwide Mut. Ins. Co. v. Davis*, 195 A.D.2d 561 (2d Dep't 1993) (disallowing an insurance carrier from enforcing an offset where the "face sheet" of an underinsurance policy did not indicate such a reduction); *Nationwide Mut. Ins. Co. v. Corizzo*, 200 A.D. 2d 621 (2d Dep't 1994) (holding the same). However, courts in this circuit have subsequently limited the applicability of *Mucatel*'s holding.

---

[3] As a threshold matter, the Court retains subject matter jurisdiction over this claim under 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00. The amount in controversy is determined by the amount pled in good faith, *see Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996); here, $100,000.00. *See* Compl. ¶ 6.

In *Matter of Allstate Ins. Co. (Stolarz)*, the New York Court of Appeals held that *Mucatel* and its progeny only apply in cases involving underinsurance policies and not in cases involving combined underinsurance and uninsurance policies. 81 N.Y.2d 219 (1993). Plaintiffs' policy was a combined underinsurance and uninsurance policy. *See, e.g.*, Ex. 1-1 to Compl. at 21 (where the policy reads "Statutory Uninsured or Supplementary Uninsured/Underinsured (SUM)"). As such, *Mucatel* does not apply here.

Plaintiffs nevertheless insist that, to be enforceable, offset language must be included on the first page of an insured's policy declarations and not "buried, shunted, and hidden away on the last page." *See* Pls.' Opp'n to Def.'s Mot. to Dismiss at 8, ECF No. 55-2. No such requirement exists under New York law, particularly in the context of combination underinsurance and uninsurance policies. *See Urban*, 23 F. Supp. 2d at 325–26 ("[W]here the insurance policy at issue clearly is a combination underinsured/uninsured policy, the courts have refused to follow the rationale set forth in *Mucatel*, *Davis*, and *Corizzo* and have permitted a set-off. . . . [T]he Court notes that the rationale applied in *Mucatel* does not apply to Urban."); *Gov't Emps. Ins. Co. v. O'Haire*, 247 A.D.2d 387, 388 (2d Dep't 1998) (finding an offset provision enforceable when not included on the first page of the policy declarations); *Transp. Ins. Co. v. Mueller*, 268 A.D.2d 526, 526 (2d Dep't 2000) ("The fact that the offset provision was not contained in the declaration page of the policy would not warrant a contrary conclusion.").[4]

---

[4] The parties also dispute the applicability of *Friedman v. Geico Gen. Ins. Co.*, 14-CV-537, 2017 WL 10109879 (E.D.N.Y. Jan. 13, 2017) (Go, Mag.). *See* Def.'s Mot. for Partial Summ. J. at 10–11; Pls.' Opp'n to Def.'s Mot. for Partial Summ. J. at 23. In *Friedman*, the plaintiff argued the defendant should not be entitled to two offsets: first, an offset for the damages amount paid by the underlying tortfeasor's carrier to the plaintiff; and second, an offset for the plaintiff's comparative negligence, if any, as such a provision was not contained in the declarations sheet of the insurance policy. *Friedman*, 2017 WL 10109879 at *5–8. The second offset in *Friedman* has no direct bearing on this case. And the *Friedman* Court never properly disposed of the issue of the first offset; rather, it found that the defendant did not waive its offset for those payments.

Because the offset provision applies, Plaintiffs' original policy limit of $100,000.00 in SUM coverage must be reduced by the $50,000.00 already tendered by Esurance. The Court grants Defendant's motion for summary judgment and limits Plaintiffs' combined breach of contract claim to the $50,000.00 still available under Plaintiffs' policy.

III.   Plaintiff Rita Bronnberg's Loss of Consortium Claim

Finally, Plaintiffs assert a loss of consortium claim on behalf of Plaintiff Rita Bronnberg. The Complaint alleges Plaintiff Rita Bronnberg "lost the said services, earnings, consortium and society of [Plaintiff Gidaliy Bronnberg], and was caused to expend monies in the care and treatment of the injuries so sustained by [him]." Compl. ¶ 25. The Court ruled in its decision on Defendant's motion to dismiss that Plaintiffs could not make out a derivative cause of action for loss of consortium, as Plaintiffs did not allege Defendant acted tortiously. Decision & Order as to Mot. to Dismiss at 7. The Court ruled, however, that Plaintiff Rita Bronnberg did have a right to recover for loss of consortium under the SUM portion of Plaintiffs' policy considering she is also insured under that policy. *Id.*

Defendant does not separately move for summary judgment on this claim; rather, it argues "the additional of [sic] a loss of consortium claim by [Plaintiff Rita Bronnberg] does not increase the overall available policy limits. . . . this Court should hold and determine that [P]laintiffs' recovery is limited to the $50,000 remaining available" under Plaintiffs' policy. Def.'s Reply to Mot. to Dismiss at 9–10, ECF No. 57-3.

The Court agrees. As discussed above, after deducting the $50,000.00 tendered by Esurance from Plaintiffs' $100,000.00 policy limit, Plaintiffs have $50,000.00 in SUM coverage

---

Regardless, *Friedman*'s authoritative weight is unclear considering the district court never adopted it. *Id.* at *6.

10

remaining. If Plaintiffs can establish damages from the car accident over and above the $50,000.00 received from Esurance—regardless of whether such excess damages resulted from Plaintiff Gidaliy Bronnberg's injuries or Plaintiff Rita Bronnberg's loss of consortium—Plaintiffs may recover up to the $50,000.00 still available under their policy.

## CONCLUSION

Accordingly, the Court **DENIES** Plaintiffs' motion to strike certain affirmative defenses and **GRANTS** Defendant's motion for partial summary judgment. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 52 and 53.

The Court SCHEDULES trial in the above-captioned case to begin on Monday, March 30, 2026, at 9:30 A.M. The Court further DIRECTS the parties to file their Joint Proposed Pretrial Order on ECF on or by Monday, March 2, 2025, at 5:00 P.M.

The parties' exhibits and filings must comply with the individual motion practices and rules of the Honorable William F. Kuntz, II; the local rules of the Eastern District of New York; and the Federal Rules of Civil Procedure. The trial will proceed before the Honorable William F. Kuntz, II, in Courtroom 6H North at the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201.

SO ORDERED.

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 5, 2025
     Brooklyn, New York

11